UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA LORINCZ SHELTON,<br><br>    Plaintiff,<br><br> v.<br><br>LISA MADIGAN, Illinois Attorney<br>General, et al.,<br><br>    Defendant. | Case No. 04 C 1818<br><br>Judge Joan B. Gottschall |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Linda Lorincz Shelton's Motion to Vacate, Motion for Leave to File a Second Amended Complaint, and Motion to Lift Stay. For the following reasons, the motion to vacate is denied, the motion for leave to file the second amended complaint is denied as moot, and the motion to lift stay is denied as moot.

**I. BACKGROUND**

On May 6, 2004, plaintiff Dr. Linda Lorincz Shelton filed a complaint in federal court alleging various civil rights abuses against numerous State of Illinois officials and public servants. The alleged causes of action are related to some criminal actions in which Dr. Shelton is a defendant and arose when she attempted to serve papers on the Illinois Attorney General's office. She became involved in an argument with a state employee, which led to more altercations with other state employees, culminating in her arrest. Although Dr. Shelton was incarcerated for a matter of hours, she claims that during that time, she was injured and denied necessary medical attention. She is seeking actual and punitive damages against the named

1

defendants pursuant to 42 U.S.C.A. §1983, §1985, and §1986.

On December 8, 2004, Dr. Shelton failed to appear for a status hearing before this court. This court continued the status hearing to January 19, 2005, and stated in its minute order that "plaintiff and/or by counsel[1] is required to appear at scheduled status hearings. Failure to appear on [January 19] will result in a dismissal of this case for want of prosecution." Minute Order (Dec. 8, 2004). Dr. Shelton appeared at the January 19, 2005 hearing and the case proceeded.

On June 29, 2005, this court held another status hearing at which Dr. Shelton presented a series of motions. This court granted her motion to stay this case pending the resolution of the state court criminal cases giving rise to this case[2] and continued the status hearing to December 14, 2005. However, Dr. Shelton failed to appear for this status hearing. She did not provide the court with any advance notice, seek to reschedule, or even notify the court afterward as to why she failed to appear. The court continued the status hearing to February 2, 2006, once again warning Dr. Shelton in its minute order that failure to appear would result in dismissal of her case for want of prosecution. Minute Order (Dec. 14, 2005). Dr. Shelton failed to appear on February 2, 2006, again with no advance notice or explanation, and the court accordingly dismissed her complaint for want of prosecution, entering judgment for the defendants. Minute

---

[1] At the outset of this case, Dr. Shelton moved for leave to proceed *in forma pauperis* and requested appointed counsel, which the court granted. Although the civil docket sheet refers to Laurence M. Landsman as lead attorney, he has not signed any of the motions or pleadings in this case, nor does he appear to have had any involvement in this matter. Dr. Shelton designates herself as "*pro se*" in her filings, which, for all intents and purposes, she appears to be. Accordingly, the court will treat her as a *pro se* litigant in its resolution of this motion.

[2] Although it is not explicit in the record, it appears that when the court stayed the case, it also stayed the resolution of Dr. Shelton's other motions, whereby she sought to amend her complaint.

Order (Feb. 2, 2006). Dr. Shelton was notified of the dismissal and entry of judgment by mail that same day.

It was not until April 3, 2006 that Dr. Shelton filed her combined motion seeking to vacate the court's dismissal of her case pursuant to Federal Rule of Civil Procedure 60(b)(1)[3] in which she explained why she was absent from the two hearings. According to her motion, Dr. Shelton appeared in state court for a hearing on December 14, 2004, where she was arrested on an outstanding warrant.[4] She was held "incommunicado" in the Cook County Jail Cermak Health Services acute psychiatry tier from December 14 through December 30, 2005. Plaintiff's Motion to Vacate ¶¶ 22-30. She was released from December 30, 2005 through January 6, 2006. On January 6, 2006, she was arrested during another court appearance.[5] Immediately after her arrest, she collapsed and was taken to St. Anthony's Hospital for four days. She served the remainder of her sentence at the Cook County Jail. *Id.* at ¶ 31. She was released on January 20, 2006, whereupon she went directly to the hospital. There she was treated for "significant dehydration and presyncope, borderline renal failure, untreated chest pain and inability to stand," was given IV infusions, stabilized, put under observation, and then was discharged later that day.

---

[3]Dr. Shelton describes her motion as brought under Federal Rule of Civil Procedure 60(b)(1) and (3). However, Rule 60(b)(3) requires a showing of fraud, misrepresentation, or some other misconduct by an adverse party. Because Dr. Shelton has failed to make these allegations in her motion, and because these is no support for these allegations in the record, the court will construe this motion as one for relief under Rule 60(b)(1) only.

[4]The state court issued the warrant when Dr. Shelton failed to appear for a previous court appearance in the same case. Dr. Shelton has claimed that there was a misunderstanding or miscommunication leading her to believe that the criminal court had been notified of her inability to come to that day's hearing and was not expecting her, which clearly was not the case.

[5]Dr. Shelton did not give the court's reasons for re-incarcerating her. From the events described in her motion, this court assumes it was some type of contempt sanction.

*Id.* at ¶36. Once home, Dr. Shelton was so debilitated by her experiences that she was unable to take care of any business matters until early February. Affidavit of Thomas Shelton at ¶13. These circumstances, Dr. Shelton claims, diminished her health to the extent that she was unable to learn of or attend the scheduled hearing. She asks this court to vacate its dismissal, permit her additional time to file an amended complaint, and lift the stay in this matter.[6]

At this point, the court notes that although Dr. Shelton may have had severe health problems while incarcerated, she was nevertheless able to write two Emergency Motions to the Illinois Appellate Court, *id.* at ¶26 and at ¶32, arrange for the motions to be delivered, *id.*, and attend a state court proceeding on January 6, 2006. *Id.* at ¶30. In other words, while Dr. Shelton's symptoms may have been severe during that period, they were not incapacitating.

Once the court received Dr. Shelton's motion to vacate, it scheduled a status hearing. At the hearing on April 13, 2006, it set a briefing schedule and ordered Dr. Shelton to supplement her motion with affidavits and medical records supporting her explanation for her failure to appear. On May 15, 2005, Dr. Shelton submitted her Supplement to Motion to Vacate, which consisted of the affidavit of her son, Thomas Shelton, and medical documents printed on February 14, 2006 summarizing her condition as of January 20 or 21, 2006. In his affidavit, Thomas Shelton attests that he saved his mother's mail, but did not read it, during her incarceration, and that he might have misplaced the court's December 14 order. Affidavit of Thomas Shelton at ¶12. The medical records are not submitted with any physicians' affidavits

---

[6] This court originally granted the stay pending the resolution of the underlying criminal proceedings against Dr. Shelton. Dr. Shelton now claims that the criminal cases "will not be concluded in a timely fashion due to the lawlessness of the [defendants]" and seeks to move forward with her litigation despite the pendency of these cases. Motion to Vacate at ¶54.

and do not appear to support Dr. Shelton's claim that she was physically incapacitated on or before February 2, 2006.

In response to Dr. Shelton's motion and supplemental evidence, the defendants argue that Dr. Shelton failed to file a motion to alter or amend the court's judgment within ten days under Federal Rule of Civil Procedure 59(e), and did not appeal this court's entry of judgment, and that this Rule 60 motion is an improper substitute for an appeal. They further object to the nature of Dr. Shelton's evidence in support of her motion, arguing that Thomas Shelton's affidavit and the unauthenticated medical records are insufficient to justify the type of "extraordinary relief" available under Rule 60(b)(1). Finally, the defendants argue that the circumstances Dr. Shelton has alleged do not satisfy the high burden needed to prevail on a Rule 60(b)(1) motion.

## II. DISCUSSION

Federal Rule of Civil Procedure 60(b)(1) permits the court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect ... or [for] any other reason justifying relief from the operation of the judgment." When seeking to vacate a default judgment under this rule, the moving party has to demonstrate: (1) that she had good cause for the default; (2) that she took quick action to correct the default; and (3) that she has a meritorious defense to the original claim. *Jones v. Phipps*, 39 F.3d 158 (7th Cir. 1994).

Demonstrating good cause or excusable neglect to satisfy the first prong of the test is not an easy task. Excusable neglect occurs only where there are "exceptional circumstances [that] demonstrate that the events contributing to a default judgment were not within the meaningful control of the defaulting party... [W]here a party willfully, albeit through ignorance or

5

carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted." *Zuelzke Tool & Engineering Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226 (7th Cir. 1991). Simply being an incarcerated *pro se* litigant does not necessarily constitute "good cause." *Jones v. Phipps* at 163. Hospitalization for a drug treatment program during a previously scheduled civil trial may be similarly insufficient to obtain relief under Rule 60(b)(1). *Moffitt v. Illinois State Board of Education*, 236 F.3d 868 (7th Cir. 2001).

What constitutes "quick action" to correct the default is also subject to the court's discretion, and it is often determined by the circumstances of the individual case. For example, if it takes months for a diligent party to learn of the entry of default judgment, a court may find that the party nevertheless took "quick action," whereas a party who learns of the entry of judgment but fails to take steps to address it immediately may only have a period of weeks to act. In *Jones v. Phipps*, 39 F. 3d 158 (7th Cir. 1994), the five-week delay between the entry of judgment and the moving party's motion to vacate was not quick enough, even though the moving party had been incarcerated for some of this time period. The court took into account that she could make and receive phone calls and could execute documents during that time period and therefore could have filed her motion more promptly. *Id.* at 165.

Assuming the moving party has demonstrated good cause and quick action, it must also show that there exists a "meritorious defense" to the entry of default judgment. Many courts do not reach this point in the analysis, having found that the moving party failed to sustain its preliminary burden on the first two factors. If a court does consider this issue, it need not require the moving party to defeat the judgment beyond a doubt; however, the moving party must at least demonstrate some issue bringing into question the judgment's propriety. *Jones v. Phipps*,

39 F.3d at 165.

Because Dr. Shelton is proceeding as a *pro se* litigant, the court is inclined to hold her to a less stringent standard than it would parties who are actively represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Nevertheless, as her own complaints and motions indicate, Dr. Shelton is no stranger to the courtroom. She is intelligent, articulate, and quite knowledgeable about the litigation process. Over the past several years, she has proven herself more than capable in navigating both the state and federal courthouses in various types of actions. Therefore, while she might be entitled to some leniency on highly technical issues of evidence, the court will presume that she understands a litigant's duty to the court and to the litigation process and will require her to take such duty seriously.

### III. ANALYSIS

Without question, there is sufficient cause in this case to deny Dr. Shelton's motion. The December 14, 2005 hearing that she did not attend had been scheduled in June 29, 2005, and there is nothing in the record indicating that Dr. Shelton did not have notice of the date. The fact that she had a state criminal court hearing scheduled the same day is not good cause or excusable neglect. Dr. Shelton was on notice that she was expected before this court on December 14, 2005, knew that she was expected to appear at all status hearings,[7] and nevertheless failed to notify the court of her inability to attend before the fact. If Dr. Shelton's state court appearance was prior to or during the time of this court's previously scheduled December 14 status hearing,

---

[7]At the December 2004 status hearing that Dr. Shelton failed to attend, the court admonished her that failure to attend the subsequent status hearing would result in her case being dismissed for want of prosecution. Accordingly, she was, or should have been, aware of the consequence of missing two consecutive status hearings.

7

she had an obligation to deal with the conflict *before* December 14; on the other hand, if the state court appearance was later in the day, she could have appeared before this court first.

Once Dr. Shelton was arrested on December 14, 2005, she still could have taken some action. Even though she was incarcerated and in ill health for most of the period between December 14, 2005 and February 2, 2006, she could have--and should have--determined what her responsibilities were with respect to this case. Although she claims to have been held "incommunicado," she managed to draft and file motions with the help of family members or friends. Had she thought of it, she or another person could have contacted this court to obtain information about the status of her case and her next court date.

Dr. Shelton's ill health after her release from prison is likewise not particularly compelling. It was partially brought on by her own decision to go on a hunger strike, which she admits exacerbated her already weakened condition. Motion to Vacate at ¶28. Moreover, she had been able to appear in state court on January 6, 2006, and the evidence from her visits to physicians on January 20, 2006 does not demonstrate that she was incapable of appearing before this court on February 2, 2006. Although she has stated that her poor health restricted her from managing her affairs during this time, there is no support for this statement, and the court does not find it credible, given her activities while incarcerated. Thomas Shelton's affidavit admits that Dr. Shelton was able to leave her house to attend a criminal hearing (¶10) and to go out for dinner (¶9) after being released from jail. Even if Dr. Shelton's health issues were severe enough to limit her activities, there is still the unanswered question of why she did not contact the court and seek a continuance given her absence from the December 14, 2005 hearing.

The court gave Dr. Shelton an opportunity to show good cause or excusable neglect when it ordered her to supplement her motion with affidavits and medical records supporting her failure to appear on February 2. She has not done so, and it is impossible for the court to know exactly why she did not appear. Although her pleadings implied that she was either physically incapable of appearing in court or did not know of the scheduled court date,[8] she never definitively stated why she failed to appear. This court cannot rely on inferences when it is Dr. Shelton's duty to provide evidence. Because Dr. Shelton has not provided this court a showing of good cause or excusable neglect, particularly after having been given the opportunity to do so, she has failed to sustain her burden under Rule 60(b)(1).

Furthermore, Dr. Shelton did not comply with Rule 60(b)(1)'s "quick action" requirement. Once her case was dismissed, it was more than two months before she filed her motion to vacate. If one has let two hearings go by without attending them and has one's lawsuit dismissed, allowing an additional two months to elapse before addressing these issues in any meaningful way is not "quick action."

In summary, what this court sees when examining the record is a pattern of Dr. Shelton's lack of diligence. She has failed to appear for scheduled hearings, both in state and federal courts, without seeking to resolve scheduling conflicts before the fact or offering an explanation after the fact. While it may be difficult for a litigant with numerous pending cases to keep abreast of each one, this does not excuse failing to attend a scheduled hearing, let alone failing to notify the court in advance or after the fact. It is the responsibility of even a *pro se* litigant to

---

[8]Even if Dr. Shelton had given either as reasons for her failure to appear, the court could still find lack of good cause or excusable neglect because of her failure to stay abreast of her case's progression after the December 14, 2005 status hearing.

stay informed of her case's status, regardless of whatever other events may be occurring in her life. Life sometimes takes us in strange directions, and ordinarily, this court is sympathetic to *pro se* litigants who may fail to appear for the occasional hearing or status call. But Dr. Shelton had already failed to appear in December of 2004, was warned, and therefore knew the consequences of her actions. She has not shown good cause, excusable neglect, or quick action. Accordingly, her petition to vacate is denied.[9]

## III.  CONCLUSION

According to the reasons set forth above, the court hereby DENIES Dr. Shelton's Motion to Vacate and DENIES her Motions to File an Amended Complaint and to Lift Stay as moot.

ENTER:

/s/_____

Joan B. Gottschall
United States District Judge

Dated: October 24, 2006

---

[9]Since Dr. Shelton's case is no longer pending before this court, this court denies her additional motions to file a second amended complaint and to lift the stay as moot.